Judge Robertson
delivered the opinion of the Court.
The appellants, as administrators of Jacob Fishback, deceased, sold at auction, the personal estate of the decedent, in October, 1821, and among others who purchased at the sale, the appellee bought property to the amount of $101 12 1-2, and executed his note with security, at twelve- months credit, for one hundred and one dollars twelve and a half cents.
Judgment being obtained on this note, against the appellee, he filed his bill in chancery for an injunction and final relief; charging, that the sale was for commonwealth’s paper, or the common currency of the state; that this was the general understanding of the purchasers and others, at the sale, was announced as one of the terms by the crier, and frequently repeated during the sale, by the administrators; that the pro *85 perty which he purchased at the sale, was high, even in bank paper, which was the only medium then in general circulation, and that the note was "inadvertantly” drawn for dollars.
Def’s answer lhhe • beeVfor piper, or that the n°te was ^ecuied1.”^
Examination of the deposithe" bill,
Testimony in support of the answer.
No immoncileable distbePde°osin tioss.
The answer admits, that the administrators received paper of some other purchasers, on the day of sale, and of others, when their notes became due, at the rate of exchange at the time of sale; but denies that the sale was for paper, or that there was any mistake, or inadvertance in the drawing or execution of the note.
Many depositions were taken, exhibiting some contrariety of facts and opinions: but there is a decisive preponderance in numbers, as well as in the intrinsic probabilities attested, in favor of the allegation, that it was the general understanding, that the property was selling for current paper. Many witnesses swear, that the crier stated publicly during the sales, that they were for the common currency, but that gold or silver would not be refused. Others, on the same side, .swear, that the administrators said, during the sale, that it was not for specie, but for the common currency. This, however, is not proved to have been published generally.
For the administrators, sundry persons, who were at the sale, swear, that they heard no suggestion from any person, that the sale was for paper; that they heard the administrators reply to inquiries made on that subject, by individuals, that they could not make any agreement, which could compel them to receive depreciated paper; but that they would receive whatever would pay debts, and satisfy the distributees.
These are the prominent facts exhibited in the testimony; other subordinate circumstances are proved, which have some influence on the principal facts; but it is useless to extend this opinion by recapitulating them.
There is no discrepancy in the various opposing depositions, which cannot be reconciled. The facts proved by the administrators, are chiefly negative, and do not essentially conflict with the affirmative facts established by the appellee. An analysis ®f the, facts *86 contained in each deposition, would clearly shew, that there is nothing irreconcilable in the testimony. We are well convinced, that the appellee, and a large majority of the persons at the sale, understood that it was for current paper; and we have as little doubt, that this understanding was authorized by the crier and administrators. We believe, too, that the administrators stated to many, who individually applied to them, that they could not be bound to receive paper unconditionally. And from all the circumstances, we are bound to believe, that the administrators were willing, that the impression should be made- on the croud, that the sale was for paper, to enhance the amount of sales; and perhaps connived at suggestions by the crier and others, which had a delusive effect; intending, if possible, to have it in their power, either to receive the paper, or to coerce specie on a replevin of two years: and we believe, that this was the understanding of some of the witnesses.
The views of the administrators.
Decree of the circuit court.
Parol evidence competent to prove fraud or mistake, in the execution of any written instrument.
The circuit court perpetuated the injunction for one half of the amount of the note, which was the ratio of depreciation, when the note became due.
This decree seems to accord with the abstract justice of the case. But general principles of equity and fixed rules of law, being indispensable to the wholesome administration of justice, if the decree cannot be sustained, without relaxing or violating some of them, it must be reversed; and if this shall be the case here, we shall only see another illustration of the maxim, every where and every day exemplified, that the general good is secured, at the expense of individual hardship.
We have never doubted, that parol evidence is competent to prove fraud or mistake, in the execution of any written contract. We are only surprised, that-for years past, it should have been deemed necessary by court or lawyer, to employ argument, or cite authorities, to prove a doctrine so well and so long established. The case of Inskoe vs. Proctor, contains nothing new. Its principles had been so well understood, that in the prfevious case of Baugh vs. Ramsey, the court seem to consider them too plain, to need the support of *87 reasons or cases. We know of no case in modern jurisprudence, in which any enlightened chancellor has refused relief against a writing, in the execution of which, fraud or mistake had been established. But, must not the fraud or mistake be alleged, and clearly-proved? Public policy and private security require, that on appropriate allegations to let'in parol proof, that proof should be very strong and clearly convincing.
The allegations of the bill insufficient.
The fraud or mistake must be in the execution of the instrument, for parol proof, to contradict the terms of it, or «ary its stipulations.
Proof of paper consideration, of a note for dollars, does not per se, prove a mistake or fraud.
For parol evidence to alter or modify the terms of a written instrument; it is necessary to establish some fact independent of the consideration, establishing fraud or mistake.
There is no allegation in this bill, of fraud in the procurement of the note: nor is any mistake in its execution, distinctly averred. We are willing, however, to allow, that by the expression “inadvertantly drawn,” mistake is intended, and may be understood. But the mistake or the fraud, must be in the execution of the note. It is not proved, that the language or import of the note, was not well understood; or that either was different from what was intended by the parties, when it was written and signed. Proving the consideration, as is satisfactorily done in this case, might conduce very forcibly to confirm slight circumstances, tending only remotely, to the establishment of fraud or mistake, and which circumstances, without some subsidiary fact, would be clearly insufficient. But evidence of a paper consideration, however clear and conclusive, does not per se prove a mistake or a fraud, in the execution of the note given on that consideration, for dollars or money. There must be some substantive fact established, independent of the consideration, before the chancellor can set aside or modify the legal import or effect of a solemn written contract. If an obligor understands the language and effect of a note when he signs it, and executes it willingly, and without being seduced by the fraud of the obligee, he ought not to be, he never is, permitted to dispute or deny its obligation, according to its rational and legal construction. In such a case, there is no fraud, and certainly no mistake; and parol evidence cannot resist, alter or control the writing, which is the highest evidence of the contract.
In this case, the subscribing witness has not proved, that the note was not drawn as it was directed to be drawn; or that it was not understood as drawn; or *88 that there was any expectation when it was signed* wor<^ dollars, without the adjunct “in specie” or “commonwealth paper,” would mean paper. There is no proof whatever, of any mistake, in the execution no^» except what is furnished by evidence of the consideration, it is not proved, that the word “dolIars,” at the date of the note, was understood by the PeoP^e generally, or by the contracting parlies, to mean paper or specie dollars, indifferently; so as to shew, by proving this equivocal popular import of the Word, when used in contracts at a particular period, and in a particular place, that it did not necessarily mean, when inserted in a note, specie dollars; and that, therefore, proving by parol evidence clearly, that ^10 consideration was paper, might not contradict or detract frorp the note. Nor has it been proved, that at the date of the note, when contracts were made for specie, they were literally so expressed: nor, indeed, has any circumstance in aid of the relief sought, been attempted to be proved, except that the sale was for paper. To what extent other proof might operate, we cannot judicially pre-determine; it is enough, that it is wanting in this case.
•No proof m mi-take6or'"3 fraud, except what is dcriterm^orthe6 sale and the consideration of the note, deemed'siiffi1-6 cienttoexonerate the theTe^aUd^1 feet of his written stipu‘^loIlars°”^a^
Decree reversed, and cause remanded.
Hanson, for plaintiff; Depew and Barry, for defendant.
Cases like this, are seldom, if ever, skilfully prepared; and are generally lost for want of proper preparation. It would not often happen, that specie could be coerced on a note founded on a paper consideration, if all the facts which might be averred and proved, were properly presented. But we must decide on cases, as they appear on the record before us; and in doing so, we must adhere to general and fundamental principles, on the inflexible application of which, depend the rights of the people. We must decide the law, as we understand it; and by applying this test to the case before us, we are constrained to reverse the decree of the inferior court, and remand the case fora final decree, dissolving the injunction, and dismissing the bill.
Petition for a re-hearing.
Messrs. Barry and Depew, presented a petition for a rehearing.